# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

LIBERTY WOODS INTERNATIONAL,
INC.,

     Plaintiff,

  v.

THE MOTOR VESSEL OCEAN
QUARTZ, her engines, tackle,
appurtenances, etc., *in rem*,
and DALIA SHIP HOLDING SA,
*in personam*,

     Defendants.

1:15-cv-08843-NLH-AMD

**OPINION**

---

**APPEARANCES**:

CRAIG SHAW ENGLISH
KENNEDY LILLIS SCHMIDT & ENGLISH
75 MAIDEN LANE
NEW YORK, NY 10038-4816
  On behalf of plaintiff

CHARLES P. NEELY
RICHARD Q. WHELAN
PALMER BIEZUP & HENDERSON LLP
330 MARKET STREET
CAMDEN, NJ 08102
  On behalf of defendants

**HILLMAN, District Judge**

  Presently before the Court in this admiralty action is the
motion of defendants to dismiss plaintiff's complaint.
Defendants premise their motion on a forum selection clause
contained in bills of lading for the shipment of plywood which
was damaged in transit.  For the reasons expressed below,
defendants' motion will be granted.

**BACKGROUND**

Plaintiff Liberty Woods International, Inc. ("LWI") filed this action against defendant Dalia Ship Holding S.A., *in personam*, and defendant vessel M/V OCEAN QUARTZ ("Ocean Quartz"), *in rem*, for damage LWI claims occurred to cargo of crates of plywood loaded aboard the Ocean Quartz in the ports of Tanjung Manis, Malaysia; Bintulu, Malaysia; and Samarinda, Indonesia in December of 2012, and discharged at the port of Camden, New Jersey on February 14 through 21, 2013.

LWI was the receiver, consignee, and owner of the cargo pursuant to bills of lading and contracts of carriage described in Schedule A of the complaint.  Dalia was the owner of the Ocean Quartz, which carried the cargo pursuant to the bills of lading.  The bills of lading were issued by SK Shipping Co., Ltd., which served as the time charterer.

When the Ocean Quartz was again bound for Camden in April 2013, LWI notified counsel for the vessel that it intended to arrest the Ocean Quartz to recover for its damaged cargo, unless the vessel's P&I Club posted a letter of undertaking.[1]  A letter of undertaking ("LOU") is a substitute for the physical arrest of a vessel.  An LOU is an agreement that the vessel will appear in and defend an action *in rem*, and a guarantee of payment of

---

[1] Protection and Indemnity Clubs are associations of ship owners who band together to provide insurance.

2

any judgment up to an agreed amount, with the vessel being permitted to continue its operations.  On May 10, 2013, Dalia arranged for an LOU, which provided that a claim of owner and *in rem* appearance by Dalia in this Court would be without prejudice to all defenses available to Dalia and the Ocean Quartz.

After filing its complaint, LWI became aware that Dalia bareboat chartered[2] the Ocean Quartz to another company, Star Bulk Carrier, Co., S.A., and Dalia therefore has no liability for the damaged cargo.  LWI has not filed suit against Star Bulk Carrier or the time charterer, SK Shipping.  Thus, LWI's only claim in this action is against the Ocean Quartz, *in rem*.[3]

Ocean Quartz has moved to dismiss LWI's claim against it based on a forum selection clause in the bills of lading.  The forum selection clause in the bills of lading provides, "Any claim, dispute, suit or action concerning goods carried under this Bill of Lading, whether based upon breach of contract, tort, or otherwise shall be brought before the Seoul District Court in Korea."  (Docket No. 13-4 at 1 ¶ 33.)  Ocean Quartz argues that LWI's claim against it must be dismissed because the forum selection clause does not permit LWI's *in rem* claim to

---

[2] LWI explains that an owner which bareboat charters a vessel retains title to the vessel, but relinquishes all control and responsibility for the vessel to the bareboat charterer.

[3] This process is governed by Rule C(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture.

proceed in this Court.

In opposition to the Ocean Quartz's motion, LWI argues that the forum selection clause is invalid because Korean law does not allow for *in rem* actions against vessels.  LWI contends that its inability to bring an action *in rem* against the vessel violates the Carriage of Goods at Sea Act ("COGSA"), formerly 46 U.S.C. § 1300, et seq., currently 46 U.S.C.A. § 30701, et seq., Pub.L. 109-304, § 6(c), Oct. 6, 2006, 120 Stat. 1516.

In response to LWI's argument, the Ocean Quartz contends that the overwhelming authority on the issue has consistently upheld such forum selection clauses, and that this Court should follow that authority instead of a few outlier cases.

**DISCUSSION**

**A.   Subject matter jurisdiction**

Admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule F of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, and are within the subject matter of this Court by virtue of 28 U.S.C. § 1333(1).  The Court additionally has jurisdiction over the subject matter of this action by virtue of 28 U.S.C. § 1332(a)(2), as the matter in controversy is between a citizen of the United States and citizens of a foreign state and exceeds $75,000 exclusive of interest and costs.

4

**B.    Standard for motions to dismiss for improper venue**

The Ocean Quartz does not specify the Federal Rule of Procedure upon which it bases its motion to dismiss for improper venue.  Questions of venue are typically considered under the standards of Rule 12(b)(3), but the Third Circuit has held that dismissal pursuant to Rules 12(b)(6) is appropriate where a forum selection clause designates a non-federal forum as the exclusive forum for litigation.  Sahara Sam's Oasis, LLC v. Adams Companies, Inc., 2010 WL 3199886, at *1 (D.N.J. 2010) (citing Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 298 (3d Cir. 2001).  Because the parties have submitted documents outside of LWI's complaint, the Court will consider the Ocean Quartz's motion under the Rule 12(b)(3) standard.  In raising a 12(b)(3) challenge, the defendant bears the burden of showing that venue is improper.  Myers v. Am, Dental Ass'n., 695 F.2d 716, 724 (3d Cir. 1982).  Where venue is proper but a forum selection clause points to another venue, a court may dismiss the claim pursuant to a Rule 12(b)(3) motion.  See Salovaara, 246 F.3d at 298.

**C.   Analysis**

LWI argues that the bills of lading issued by SK Shipping, a Korean entity, are contracts of adhesion which contain a forum selection clause that violates COGSA because it eliminates its ability to bring its cargo damage claim against the Ocean Quartz

*in rem* since Korean law does not recognize actions against vessels *in rem*. The exact same position was advanced by the plaintiff in Fireman's Fund Ins. Co. v. M.V. DSR Atlantic, 131 F.3d 1336 (9th Cir. 1997), cert. denied, 525 U.S. 921 (1998), and rejected by the Ninth Circuit. The Ocean Quartz argues that the Court should follow Fireman's Fund and its progeny, and not the three "outlier" cases cited by LWI. The Third Circuit has not opined on Fireman's Fund, and only three district court cases in the Third Circuit have cited to it.[4] The resolution of the Ocean Quartz's motion to dismiss therefore rests on whether the Court will follow Fireman's Fund and the dozens of cases throughout the country that have applied the Ninth Circuit's reasoning, or reject Fireman's Fund's reasoning and instead align with three courts that disagreed with the outcome of that case.

In Fireman's Fund, a shipment of wine, insured by Fireman's Fund Insurance Co., arrived damaged. Fireman's Fund paid the

---

[4] The only district court in the Third Circuit that has analyzed substantively a forum selection clause under Fireman's Fund adopted the Ninth Circuit's reasoning. See Union Steel America Co. v. M/V Sanko Spruce, 14 F. Supp. 2d 682, 687-88 (D.N.J. 1998). The other two cases that cite to Fireman's Fund simply noted that forum selection clauses in bills of lading are presumptively valid, and granted the defendants' motions to dismiss the actions because they should have been brought in the forum specified in the forum selection clause. See CBJ, Inc. v. M/V HANJIN HONG KONG, 2000 WL 33258660, at *2 (D.N.J. 2000) (Korea); Agricola Raimapu S.A. v. M/V/ APL MANAGUA, 2010 WL 31744, at *1 (E.D. Pa. 2010) (Japan).

owner and consignee of the wine for the damage, and brought suit in the United States District Court for the Northern District of California against the shipper, Cho Yang, a Korean corporation, which issued the bills of lading, *in personam*, and *in rem* against the vessel.  The bills of lading contained a forum selection clause that required that any claim arising out of the bills of lading be governed by Korean law and resolved by the courts in Seoul and no other courts.  The parties agreed that *in rem* proceedings were unavailable under Korean law.  The defendants moved to dismiss Fireman's Fund's claims for lack of jurisdiction based on the forum selection clause.  <u>Fireman's Fund</u>, 131 F.3d at 1337.

The Ninth Circuit reversed the district court, which refused to enforce the forum selection clause and denied the defendants' motion to dismiss.  In doing so, the Ninth Circuit first noted that a forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances, and that enforcement is unreasonable where it would contravene a strong public policy of the forum in which suit is brought."  <u>Id.</u> (quoting <u>The Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10, 15 (1972)) (internal quotation marks omitted).  The Ninth Circuit then went on to reject several of Fireman's Fund's arguments for why the forum selection clause was unenforceable:

7

1.    Enforcement of the forum clause would not be
unreasonable, because Fireman's Fund did not meet its heavy
burden of proof of showing that litigating in Korea might
represent a serious inconvenience to it.   Id. at 1338 (quoting
Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)).

2.    The forum selection clause did not contravene a strong
public policy of the forum in which suit is brought:

> Although litigating in Korea will deprive FFIC of its right
> to proceed in rem against The Atlantic, the loss of that
> right is insufficient to invalidate the forum clause on
> public policy grounds.  The right to proceed in rem — based
> on the legal fiction of vessel as wrongdoer — certainly has
> a long and important history.  See, e.g., the China, 74
> U.S. (7 Wall.) 53, 68, 19 L. Ed. 67 (1868) (in rem
> admiralty proceedings have their source "in the commercial
> usages and jurisprudence of the middle ages").
> Nevertheless, "in the light of present-day commercial
> realities and expanding international trade we conclude
> that the forum clause should control. . . ." The Bremen,
> 407 U.S. at 15.  Moreover, "the legal fiction of vessel
> apart from owner has not been applied when it would
> frustrate" other compelling interests.  See All Pacific
> Trading, Inc. v. Vessel M/V Hanjin Yosu, 7 F.3d 1427, 1431
> (9th Cir. 1993) (listing cases).  We therefore hold that
> the inability to proceed in rem is not sufficient to
> require us to set aside the forum clause on public policy
> grounds.

Id.

3.    The forum selection clause should not be invalidated
even if the bill of lading was considered a contract of
adhesion.  The U.S. Supreme Court upheld an arbitration clause
in a bill of lading in Vimar Seguros y Reaseguros, S.A. v. M/V
Sky Reefer, 515 U.S. 528, 534 (1995), and upheld a "non-

8

negotiated forum-selection clause" that appeared in a "form ticket contract" in <u>Carnival Cruise Lines</u>, 499 U.S. at 593.   <u>Id.</u> Even though some courts have found that bills of lading are contracts of adhesion which should be strictly construed against the carrier and any ambiguity in the bill of lading construed in favor of the shipper and against the carrier, the bill of lading "at issue in this case unambiguously mandates that 'the courts in Seoul and no other courts' are to adjudicate 'any claim or dispute' that arises," and therefore "we find no ambiguity in the forum clause, whether or not the bill of lading is a contract of adhesion is of no relevance to the result we reach in this matter." <u>Id.</u> at 1338-39.

4.   The forum selection clause did not violate the Carriage of Goods by Sea Act ("COGSA"). <u>Id.</u> at 1339.   All cargo shipments carried by sea to or from the United States are subject to COGSA, which provides in section 3(8) that "[a]ny clause . . . in a contract of carriage relieving the carrier or the ship from liability for loss or damage . . . or lessening such liability . . . shall be null and void and of no effect." <u>Id.</u> (citing 46 U.S.C. § 1312, § 1303(8)).[5]   The Ninth Circuit noted that prior to <u>Sky Reefer</u>, most courts followed <u>Indussa Corp. v. S.S. Ranborg</u>, 377 F.2d 200 (2d Cir. 1967) (en banc),

_____

[5] As discussed below, COGSA was amended in 2006, with its provisions renumbered and reworded.

which held that COGSA § 3(8) prevented enforcement of foreign forum selection clauses in bills of lading.  Id.  The Ninth Circuit explained that Sky Reefer rejected that reasoning, and held that increased litigation costs did not invalidate a forum selection clause under COGSA § 3(8).  Id. (citing Sky Reefer, 515 U.S. at 534).  The Ninth Circuit continued,

> Although Sky Reefer concerned a foreign arbitration clause — whereas Indussa concerned a "true" foreign forum selection clause — Sky Reefer makes clear that "foreign arbitration clauses are but a subset of foreign forum selection clauses in general." [Sky Reefer] at 534; see also id. at 535 ("Nothing in [COGSA § 3(8)] suggests that the statute prevents the parties from agreeing to enforce [the requirements of COGSA] in a particular forum.").  We agree with appellants that the Sky Reefer holding applies equally to forum selection clauses and arbitration clauses.

Id. (other citations omitted).

The Ninth Circuit also disagreed with the district court's determination that the unavailability of in rem rights in Korea clearly lessened liability in violation of COGSA:

> In applying COGSA, the question is not whether the foreign forum will apply COGSA itself, but "whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees." Sky Reefer, 515 U.S. at 538. COGSA "guarantees" that the carrier will: "exercise due diligence to ... [m]ake the ship seaworthy"; "[p]roperly man, equip and supply the ship"; "[m]ake the ... parts of the ship in which goods are carried ... fit and safe"; "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried"; and, "issue to the shipper a bill of lading" with specified contents. 46 U.S.C.App. § 1303 (1)—(3).  According to Sky Reefer, "[t]hese are the substantive obligations and particular procedures that § 3(8) prohibits a carrier from altering to its advantage in a bill of lading."  515 U.S. at 537.

Thus, the mere unavailability of in rem proceedings does not constitute a "lessening of the specific liability imposed by [COGSA]"; rather, it presents a "question of the means . . . of enforcing that liability." Id. Appellants have presented uncontroverted evidence that Korean law will be at least as favorable as COGSA to FFIC; Korean law therefore will not "reduce the carrier's obligations ... below what COGSA guarantees." Id. at 538.

Id. at 1339-40.   The Ninth Circuit concluded that the district court erred in finding that litigation in Korea would lessen the defendants' liability to Fireman's Fund, and held that the foreign forum selection clause was enforceable.   Id. at 1440.

In this case, LWI argues that Fireman's Fund is based on unsound law.  First, LWI contends that the Ninth Circuit's reliance upon The Bremen is misplaced because that case was not relevant to the "lessening of liability" issue that this case presents – i.e., LWI's inability to bring an action in rem against the vessel in Korea.  Second, LWI argues that the Court should follow three cases that have rejected Fireman's Fund. Third, LWI argues that in rem rights encompass more than obtaining security for the payment of damages to cargo, where a cargo owner can recover for cargo damages proceeding in rem against a vessel even if the vessel owner is not liable in personam for the cargo damage.  Thus, LWI argues that COGSA § 3(8) prohibits the carrier or the ship from contracting out of in rem liability.

The Court is not persuaded by LWI's arguments.  As a

11

primary matter, COGSA was amended in 2006, and § 3(8) was

modified.  Prior to 2006, § 3(8) of COGSA provided:

"Any clause, covenant, or agreement in a contract of carriage

relieving the carrier or the ship from liability for loss or

damage to or in connection with the goods, arising from

negligence, fault, or failure in the duties and obligations

provided in this section, or lessening such liability otherwise

than as provided in this chapter, shall be null and void and of

no effect."  Sky Reefer, 515 U.S. at 534 (quoting 46 U.S.C.App.

§ 1303(8)).  The current iteration of § 3(8) provides:

> A carrier may not insert in a bill of lading or shipping
> document a provision avoiding its liability for loss or
> damage arising from negligence or fault in loading,
> stowage, custody, care, or proper delivery.  Any such
> provision is void.
>
> . . .
>
> (a) Prohibition.--A carrier may not insert in a bill of
> lading or shipping document a provision lessening or
> avoiding its obligation to exercise due diligence to--
>
> (1) make the vessel seaworthy; and
>
> (2) properly man, equip, and supply the vessel.
>
> (b) Voidness.--A provision described in subsection (a) is
> void.

46 U.S.C.A. §§ 30704, 30705, Pub.L. 109-304, § 6(c), Oct. 6,

2006, 120 Stat. 1516.  The current version of COGSA defines the

term "carrier" to mean "the owner, manager, charterer, agent, or

master of a vessel."  46 U.S.C.A. § 30701.

The 2006 amendment to COGSA is significant because it eliminates "the ship" from the obligations previously set forth in § 3(8).  This change undermines LWI's arguments in several ways.

In 1936, Congress enacted COGSA to embody the American version of an international convention known as the Hague Rules. Wemhoener Pressen v. Ceres Marine Terminals, Inc., 5 F.3d 734, 741 (4th Cir. 1993).  "COGSA is the culmination of a multilateral effort to establish uniform ocean bills of lading to govern the rights and liabilities of carriers and shippers inter se in international trade."  Sky Reefer, 515 U.S. at 537 (citation omitted).  When Congress enacted COGSA, it is assumed "that Congress [was] aware of existing law when it passes legislation."  Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990).  Thus, for example, Congress "could have eliminated the negligence cause of action for damage to cargo through COGSA, but it did not."  Associated Metals and Minerals Corp. v. ALEXANDER'S UNITY MV, 41 F.3d 1007, 1016 (5th Cir. 1995) (citing Miles, 498 U.S. at 29-30) (holding that although "COGSA provides certain parameters under which any claim for cargo must operate, the Act does not abrogate the long-standing rule of admiralty allowing certain cargo claims to sound both in tort and in contract").

Similarly, and relevant to the case here, "COGSA assumes

13

the existence of the *in rem* proceeding rather than creates it."
Man Ferrostaal, Inc. v. M/V Akili, 704 F.3d 77, 83 (2d Cir.
2012). "The very title of Section 3 thus assumes that [United
States'] maritime law supplies *in rem* liability coextensive with
carrier liability" under COGSA. Id. "[E]ven if a vessel is not
a 'carrier' within the meaning of COGSA, maritime law renders
vessels liable *in rem* for a carrier's violations of its
obligations. Therefore, while COGSA, if applicable, may affect
or alter a carrier's obligations and thereby determine the
outcome of an *in rem* proceeding against a carrier's vessel, the
*in rem* remedy is a creature of maritime law, not COGSA." Id. at
84.

Congress was aware of existing law when it passed the
current version of COGSA, and it removed the reference to "the
ship" contained in § 3(8). Therefore, it is evident from the
plain language of COGSA that "the carrier" may not limit its
liability through provisions inserted into a bill of lading. 46
U.S.C.A. §§ 30704, 30705. Congress did not make the same
requirement of "the ship." Indeed, recognizing that many
countries do not allow for actions *in rem*, it would defeat
COGSA's purpose of establishing uniform rules for international
trade if the United States' version provided a remedy not agreed
to by other countries participating the rules governing the

international shipment of goods.[6]

Thus, to the extent that COGSA could have ever been read to prevent a bill of lading from containing a provision that would eliminate the availability of an action *in rem* against a vessel,[7]

---

[6] See, e.g., Union Steel America Co. v. M/V Sanko Spruce, 14 F. Supp. 2d 682, 691 (D.N.J. 1998) ("[M]any countries have enacted carriage of goods on the sea acts which, like COGSA, are lifted from the Hague Rules or which reflect the principles of carrier liability embodied in COGSA.  The Korean Commercial Code fits in the latter category.  A principal theme in Sky Reefer is respect for foreign tribunals and their laws. . . [I]t stretches § 3(8) of COGSA too far to say that it flatly invalidates a forum selection clause simply because there exists the potential that the foreign forum will apply its own law to the detriment of the shipper's COGSA rights."); Reed & Barton Corp. v. M.V. Tokio Exp., 1999 WL 92608 (S.D.N.Y. 1999) (rejecting plaintiffs' argument that the forum selection clause would deprive them of their substantive rights guaranteed by COGSA because German law does not recognize *in rem* actions, and explaining, "German law dictates that the Hamburg courts will apply an international convention and amending protocols together known as the Hague-Visby Rules, a fraternal equivalent of COGSA.  The Hague-Visby Rules contain a provision, similar to COGSA 3(8), which forbids "[a]ny clause in a contract of carriage relieving the carrier or the ship from liability or lessening such liability shall be null and void." See Hague-Visby Rules, Art. III, (8). Plaintiffs have not shown that application of the Hague-Visby Rules will in any way "reduce the carrier's obligations below what COGSA guarantees."); T.C. Huang, *Provisional Remedies in Admiralty Taiwan*, 4 U.S.F. Mar. L.J. 285 (1992) ("Under the maritime law of the Republic of China (ROC), an action against a marine vessel is in theory an action against the shipowner personally. The notion of suing the ship itself has no meaning in the strict sense. An action *in rem* is unavailable under ROC law. The shipowner must therefore be named as the party against whom the claim is asserted.  A ship is simply an item of property belonging to the shipowner.  Thus, the grounds and procedures for arrest of a vessel and attachment of the shipowner's other property are identical.").

[7] One of the "outlier" cases that LWI asks the Court to follow, International Marine Underwriters CU v. M/V Kasif Kalkavan, 989

which proposition <u>Fireman's Fund</u> and dozens of other cases

rejected, the 2006 amendments to COSGA make clear that the

unavailability of *in rem* proceedings in the selected forum does

not constitute a lessening of the specific liability imposed by

COSGA.[8]

---

F. Supp. 498, 499 (S.D.N.Y. 1998) based its reasoning on §
3(8)'s inclusion of "the ship":

> It is true that the remaining difficulty, viz., plaintiff's
> inability under Korean law to bring an *in rem* action
> against the vessel, would appear to deprive plaintiff of
> one of the substantive rights expressly guaranteed by §
> 3(8).  That section forbids "[a]ny clause ... in a contract
> of carriage relieving the carrier or the ship from
> liability ... or lessening such liability," 46 U.S.C. app.
> § 1303 (emphasis added), a clear reference to an *in rem*
> proceeding.  That language would be rendered meaningless if
> an *in rem* action were viewed simply as a procedural device
> not protected under § 3(8) as interpreted by <u>Sky Reefer</u>.
> Nor is the Court persuaded by the Ninth Circuit's recent
> decision in <u>Fireman's Fund Insurance Company v. Cho Yang</u>
> <u>Shipping Company, Ltd.</u>, 131 F.3d 1336 (9th Cir. 1997),
> which reached the opposite conclusion, for the court there
> appears wholly to have ignored the above-quoted statutory
> language that refers to the ship's own liability.

<u>International Marine</u>, 989 F. Supp. at 499.  Aside from the issue
of whether the presence of "the ship" in § 3(8) actually
prohibited a bill of lading from including a term that
effectively eliminated the availability of an action *in rem*, the
holding in <u>International Marine</u> has been abrogated by the 2006
amendments to COSGA that removed the reference to "the ship."

[8] <u>See, e.g.</u>, <u>CBJ, Inc. v. M/V HANJIN HONG KONG</u>, 2000 WL 33258660,
at *2 (D.N.J. 2000) (citations omitted) (explaining that courts
have found that the Korean Commercial Code affords at least the
same protections as United States law); <u>Union Steel Am. Co. v.</u>
<u>M/V Sanko Spruce</u>, 14 F. Supp. 2d 682, 692 (D.N.J. 1998)
("Several post-<u>Sky Reefer</u> cases have rejected various claims
that Korean law reduces carrier liability below what COSGA
guarantees.").

Based on the foregoing, the Court does not feel compelled to depart from the reasoning of the Fireman's Fund line of cases and read into COGSA a provision that prohibits a shipper from choosing a forum for disputes that does not recognize *in rem* actions.  Accordingly, the Court finds that the forum selection clause in this case is valid and enforceable.[9]

## CONCLUSION

For the reasons expressed above, defendants' motion to dismiss plaintiff's complaint based on a valid forum selection clause must be granted.  An appropriate Order will be entered.

Date:   November 9, 2016              s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

[9] Under the bills of lading's forum selection clause, LWI could have instituted suit to recover for its damaged cargo in Seoul, Korea against SK Shipping and Star Bulk Carrier.  LWI did not choose that avenue, and time has expired for LWI to advance such claims.